**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TEAMSTERS JOINT COUNCIL NO. 83 )<br>OF VIRGINIA HEALTH AND WELFARE )<br>FUND, et al., )<br>            )<br>     Plaintiffs, )<br>            )<br>     v.     )<br>            )<br>HOOK UP, INC., )<br>            )<br>     Defendant. )<br>_____ | <br><br><br><br><br><br><br><br><br><br>No.  04 C 8026 |
| HOOK UP, INC., )<br>            )<br>     Third-Party Plaintiff, )<br>            )<br>     v.     )<br>            )<br>CENTRAL STATES, SOUTHEAST AND )<br>SOUTHWEST AREAS HEALTH AND )<br>WELFARE FUND; CENTRAL STATES, )<br>SOUTHEAST AND SOUTHWEST AREAS )<br>PENSION FUND; and HOWARD )<br>McDOUGALL, Trustee, )<br>            )<br>     Third-Party Defendants. ) | |

**MEMORANDUM OPINION**

This ERISA case is before us on the motion of third-party defendants for summary judgment.  For the reasons explained below, the motion is granted.

**BACKGROUND**

This case was reassigned to this court's calendar pursuant to our finding that it is related to Central States, Southeast &

<u>Southwest Areas Pension Fund v. Hook Up, Inc.</u>, No. 03 C 3194 ("<u>Hook Up I</u>"). In <u>Hook Up I</u>, plaintiffs Central States, Southeast and Southwest Areas Pension Fund; Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Health Fund") (together, the "Funds"); and the Funds' Trustee Howard McDougall (together, "Central States") filed a three-count action against Hook Up, Inc. ("Hook Up"). Central States sought payment of withdrawal liability, delinquent contributions based on reported work history, unpaid contributions based on unreported work history that were revealed by an audit, interest, liquidated damages, attorney's fees and costs, and audit costs. Central States moved for summary judgment against Hook Up, which was granted. The following brief summary of the facts of <u>Hook Up I</u> is taken from our memorandum opinion:

> Hook Up was an employer required to contribute to the Funds on behalf of its employees under collective bargaining agreements executed with various Teamsters Local Unions. On August 31, 2002, Hook Up permanently ceased all covered operations under the Pension Fund.
> When Hook Up ceased operations, it effectuated a "complete withdrawal" from the Pension Fund within the meaning of ERISA, 29 U.S.C. § 1383. When an employer withdraws from a multiemployer plan, the employer becomes immediately liable for its proportionate share of unfunded vested benefits.
> . . . In October 2002, the Pension Fund calculated Hook Up's withdrawal liability ($2,782,644.50) and sent Hook Up a notice of that liability and a demand for payment. Hook Up admits that it did not make any withdrawal liability payments, nor did it initiate arbitration to contest the withdrawal liability assessment. The Funds also claim that Hook Up failed to

>    make contributions based on reported work history in addition to misreporting some employees' work history.

Hook Up I, No. 03 C 3194, 2004 WL 2997495, at *1 (N.D. Ill. Dec. 23, 2004) (citations omitted). We entered judgment in favor of Central States and against Hook Up in the total amount of $3,906,356.74.

The instant case, filed several months after Hook Up I, was originally brought in the Eastern District of Virginia by the Teamsters Joint Council No. 83 of Virginia Health and Welfare Fund and its trustees ("Joint Council No. 83"). Like Central States, Joint Council No. 83 sought delinquent pension and health care contributions on behalf of selected Hook Up employees. Hook Up filed a third-party complaint against Central States seeking a refund of contributions made to Central States on behalf of Hook Up employees who were transferred from Hook Up's Virginia facility to its Pennsylvania facility. Hook Up's position is that in the event it is found liable for contributions to Joint Council No. 83, Hook Up is entitled to a refund from Central States because it had made contributions, for a period of six months, on behalf of the transferred employees to Central States when it should have been making contributions to Joint Council No. 83.

Pursuant to Central States's motion, Judge Payne of the Eastern District of Virginia severed the third-party action between Hook Up and Central States from the main case and transferred it to

this court for all further proceedings. Judge Payne's order was entered on December 6, 2004, a few days after Central States had filed a motion for summary judgment. That motion is now pending before us. Hook Up has not filed any response, which is not surprising considering that in late January, we granted the motion of Hook Up's counsel to withdraw.[1] Counsel indicated that there were no representatives employed by Hook Up with whom to consult concerning the litigation and that Hook Up was delinquent in paying its attorney's fees and could no longer pay for counsel. Accordingly, we now proceed to decide Central States's motion for summary judgment without the benefit of any submission by Hook Up, which is now evidently defunct.

## **DISCUSSION**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom

---

[1] We indicated in open court on January 26, 2005 that the motion to withdraw as counsel for Hook Up was granted, but neglected to include that disposition in our minute order of the same day in this case. (There was, however, a corresponding minute order entered in Hook Up I, 03 C 3194.) Therefore, we will now enter a separate minute order indicating that the motion to withdraw as counsel was granted on January 26, 2005.

in the light most favorable to the nonmoving party.  See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999).

Once the moving party has supported its motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Any fact asserted in the movant's affidavit will be accepted by the court as true unless the adverse party submits its own affidavits or other evidence contradicting the assertion.  See Curtis v. Bembenek, 48 F.3d 281, 287 (7th Cir. 1995).  If the adverse party does not respond with evidence complying with Rule 56, "summary judgment, if appropriate, shall be entered against the adverse party."  Fed. R. Civ. P. 56(e).

The first argument presented by Central States is that Hook Up has failed to state a cognizable claim for a refund of contributions because ERISA does not provide employers with a means to recover mistakenly paid contributions and because ERISA preempts any state laws under which an employer can seek those contributions.  Central States acknowledges that some courts have found that federal common law affords employers the right to recover overpayments under an equitable restitution theory.  Central States contends, however, that these cases can no longer be considered good law in view of the ruling in Great-West Life &

Annuity Insurance Co. v. Knudson, 534 U.S. 204, 218 (2002). In Great-West Life, the Supreme Court held that for a restitution claim to lie in equity, a plaintiff must seek to restore particular funds or property in the defendant's possession--not simply *some* funds for benefits that were conferred. In Central States's view, Hook Up has no claim for equitable restitution because all employers' contributions to the plans are pooled, and Hook Up cannot point to a specific, segregated account containing its purported overpayment. And even if Hook Up has adequately stated a claim, Central States contends, summary judgment in its favor is appropriate because its Trustees' decision to deny a refund to Hook Up was reasonable.

Assuming, without deciding, that Hook Up has stated a valid claim for a refund of the contributions for the transferred employees, we agree that summary judgment for Central States is appropriate. Central States sets forth the following facts in its statement of undisputed material facts, all of which are deemed to be admitted by Hook Up because it has failed to controvert the facts set forth in the statement (at all) and because the facts are properly supported by references to evidentiary material. See Stewart v. McGinnis, 5 F.3d 1031, 1034 (7th Cir. 1993); N.D. Ill. Local Rule 56.1.

Hook Up entered into a nationwide collective bargaining agreement, the National Master Automobile Transporters Agreements

("NMATA") that covered Hook Up's facilities in Pennsylvania and Virginia. The NMATA required Hook Up to contribute to Central States for the Pennsylvania facility and to Joint Council No. 83 for the Virginia facility. Hook Up also entered into a Central States Participation Agreement (the "Participation Agreement") requiring Hook Up to contribute to Central States. The Participation Agreement indicated that any disputes concerning Hook Up's obligation to contribute to Central States would be submitted for resolution by Central States's Trustees.

Hook Up was also bound by the Central States Trust Agreements (the "Trust Agreements"). The Trust Agreements provide that mistaken overpayments must be used to offset other contribution obligations and that a cash refund is available only if the employer has ceased participation in Central States and has fulfilled its contribution and withdrawal liability obligations to Central States. In addition, the Trust Agreement for the Health Fund bars refund requests unless they are made within twenty days after the end of the month in which the overpayment was made. The Trust Agreements provide that interest or earnings attributable to excess contributions shall not be returned to an employer and grant the Trustees broad discretionary authority to resolve all disputes relating to the Funds and to construe the Trust Agreements.

In early 2002, Hook Up lost its Virginia customers to a competitor and was forced to permanently close its Virginia

facility. Hook Up offered to transfer its Virginia employees to its Pennsylvania facility; some employees accepted the offer. Hook Up then made contributions to Central States on those employees' behalf in accordance with the NMATA and the Participation Agreement. From March 2002 through August 2002, Central States provided pension credit and health coverage and paid claims totaling $13,132.78 on behalf of those employees.

No one objected to Hook Up's payment of contributions to Central States until Hook Up's Pennsylvania facility unexpectedly closed in late 2002. (This constituted a permanent cessation of all covered operations under the Funds, triggering the withdrawal liability at issue in Hook Up I, discussed supra.) Then, Teamsters Local 773 ("Local 773"), the local Pennsylvania union, realized that the transferred employees would be better off from a benefit-accrual standpoint if contributions for March through August had been paid to Joint Council No. 83. Local 773 filed a grievance contending that the employees' transfer was really a "temporary" transfer under the collective bargaining agreement and as such, contributions should have continued to be made on the employees' behalf to Joint Council No. 83.

Hearings on the grievance were held before the National Automobile Transporters Joint Arbitration Committee (the "NAT Committee"). Hook Up took the position that the contributions were properly paid to Central States because the employee transfers were

not temporary in light of the fact that the Virginia facility had permanently closed. In November 2002, the NAT Committee issued a decision finding that health and welfare and pension contributions made to Central States on behalf of the transferred employees should have been made to Joint Council No. 83. The NAT Committee provided no explanation or reasons for its decision. No notice of the grievance or the hearings was provided to Central States until after the NAT Committee had made its decision. Central States first learned of the decision in December 2002, when Hook Up requested a refund from Central States based on the decision.

Central States denied Hook Up's request for a refund. The Trustees disagreed with the NAT Committee and concluded that the contributions were in fact owed to Central States and not Joint Council No. 83 because the employees were transferred to Pennsylvania on a permanent, not temporary, basis. Hook Up I and the instant proceedings then ensued.

Because the plan documents here afford the Trustees broad discretionary authority to construe their terms, we review the Trustees' decision to deny Hook Up a refund under an arbitrary and capricious standard. See Militello v. Central States, Southeast & Southwest Areas Pension Fund, 360 F.3d 681, 685-86 (7th Cir. 2004). Under this standard, the Trustees' decision will not be overturned if "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based

on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass important aspects of the problem." See id. at 686 (quotations omitted).

Central States denied Hook Up's refund request because it determined that the employees at issue were transferred permanently, not on a temporary basis, given that the Virginia facility was closed permanently and the employees thus could not be transferred back (by Hook Up's own admission).[2] Therefore, the Trustees determined that contributions for those employees were properly owing to Central States. This is a reasoned explanation for the denial. The basis for Hook Up's refund request was the decision of the NAT Committee. There is no evidence that the NAT Committee's decision was binding on Central States. The evidence, in fact, is that Central States was never given notice of Local 773's grievance or an opportunity to participate in that proceeding.

Hook Up has failed to set forth any facts showing that there is a genuine issue for trial. Accordingly, summary judgment against Hook Up and in favor of Central States on Hook Up's third-party complaint will be granted.

---

[2] It does not appear, though, that Central States also denied the refund request because it was not timely made under the terms of the Trust Agreements, as Central States contends in its brief. The evidence cited in support of this statement does not reflect that reason for the denial.

## **CONCLUSION**

For the foregoing reasons, Central States's motion for summary judgment with respect to Hook Up's third-party complaint is granted.

DATE:    June 15, 2005

ENTER:   _____
         John F. Grady, United States District Judge